## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PASTOR ENTERPRISES,** | Civ. No. 19-21872 (KM) (JBC) |
| **Plaintiff,** | |
| **v.** | **OPINION & ORDER** |
| **GKN DRIVELINE NORTH AMERICA, INC., GKN SINTER METALS, LLC, ABC CORP. 1-10, and JOHN DOES 1-10,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This is a cleanup dispute in relation to a contaminated property that was home to a bearing/bushing manufacturing facility. Plaintiff Pastor Enterprises ("Pastor") is the New Jersey partnership that owned the property when the contamination of the soil and groundwater was discovered. Pastor brings this claim to recover from defendants GKN Driveline North America, Inc. ("GKN Driveline") and GKN Sinter Metals, LLC ("GKN Sinter") the significant expenses that Pastor has incurred in remediating the site. Pastor claims that these defendants are liable for the remediation expenses because the defendants' predecessor-in-interest, when it owned the property, was responsible for the contamination.

Now before the Court is the defendants' motion to dismiss the complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). For the reasons set forth below, the motion is DENIED.

## I.   Background[1]

The property in question, 544-600A Lincoln Boulevard, is located in Middlesex Borough in New Jersey. (Compl. ¶ 1). From 1940 to 1973, Bound Brook Oil-Less Bearing Company ("Bound Brook")[2] operated a bearing/bushing manufacturing facility on the premises. (Compl. ¶ 9). That manufacturing facility allegedly caused the property to become contaminated with a variety of pollutants. (Compl. ¶ 21). In 1973, Bound Brook sold the property, which was then bought and sold by several intermediaries before ultimately coming into Pastor's possession in the same year. (Compl. ¶¶ 14–16).

Environmental contamination was initially discovered near a railroad spur on the property in 1989. (Compl. ¶¶ 17–18). A subsequent investigation by the New Jersey Department of Environmental Protection uncovered extensive soil and groundwater contamination. (Compl. ¶¶ 19, 22–23). The environmental investigation and remediation process is ongoing, and Pastor claims to have incurred more than $1.1 million in remediation costs to date. (Compl. ¶¶ 23–24).

---

[1]   Citations to the record will be abbreviated as follows:

"DE __" refers to the docket entry numbers in this case.

"Compl." refers to the complaint, located at DE 1.

"Def. Mem." refers to defendants' Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, located at DE 8.

"Pl. Opp." refers to the plaintiff's opposition, located at DE 11.

"Sinkevich Cert." refers to the Certification of Michael G. Sinkevich and the Exhibits attached to that Certification, located at DE 11-1.

"Def. Reply" refers to Defendants' Memorandum in Further Support of Their Motion to Dismiss for Lack of Personal Jurisdiction, located at DE 15.

[2]   Bound Brook changed its name several times during this period. At various times it was known as Sintered Bearings, Inc., Bound Brook Bearing Corporation of America, and Bound Brook Corporation. (Compl. ¶¶ 9–14). References to "Bound Brook" in this opinion, unless otherwise stated, are intended to encompass those other names or entities.

### A. Bound Brook/GKN Corporate Succession

In 1966, the defendants' parent company (for convenience, "GKN"), acquired Bound Brook's parent company, Birfield Ltd. (Compl. ¶ 12). It appears that GKN exercised some measure of control over Bound Brook after the acquisition; for example, it sent GKN employees to work at Bound Brook facilities. (Sinkevich Cert. Exh. Q (account of former GKN employee who was stationed at Bound Brook)). In 1976, Bound Brook was renamed GKN Powder Met. Inc., and then, after a series of mergers, became GKN North America Incorporated ("Bound Brook/GKN North America") in 1987. (Compl. ¶¶ 29–31). In 2001, the GKN parent company sold Bound Brook/GKN North America to the Brambles Industries corporate family, and Bound Brook/GKN North America was renamed Brambles North America Inc. (Def. Mem. Exh. 10; Sinkevich Cert., Exh. R).

GKN Sinter was first formed in 1997 under the name GKN Powder Metallurgy, Inc. (Compl. ¶ 32). It underwent several name changes and mergers before becoming GKN Sinter in 2008.

Both GKN Driveline and GKN Sinter are incorporated in Delaware and have principal places of business in Michigan. Neither company appears to have a significant business presence in New Jersey.

### II.  Discussion

A district court undertakes a two-step inquiry to assess whether it has personal jurisdiction over a party. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.* Second, "the court must apply the precepts of the Due Process Clause of the [federal] Constitution." *Id.* Here, the first step collapses into the second, because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper

in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction: general and specific. Specific jurisdiction relies on the corporate defendant's forum-related activities that give rise to the plaintiffs' claims, while general jurisdiction applies where the defendant corporation's contacts with the forum are sufficient to render it "at home" in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984).

A plaintiff bears the burden of establishing sufficient facts to show that either general or specific jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001). While at the pleading stage a court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), ultimately the court must determine whether the facts, and not merely plaintiff's allegations, justify finding jurisdiction. *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("Once [a] motion [to dismiss for lack of personal jurisdiction] is made, plaintiff must respond with actual proofs, not mere allegations.") (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

That said, courts are to assist the plaintiff in proving jurisdiction "by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Kirkwood v. Brenntag N. Am., Inc.*, 2020 U.S. Dist. LEXIS 55104 at *14 n.3 (D.N.J. Mar. 30, 2020) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Thus, at this stage, Pastor need only present "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between the party and the forum state,' such that [its] claim is not clearly frivolous." *Id.* (quoting *Toys "R" Us*, 318 F.3d

at 456). So long as the claim is not clearly frivolous, granting jurisdictional discovery is firmly within a district court's discretion. *SoftwareArt Corp. v. Satyajit Gopalakrishnan*, 2008 U.S. Dist. LEXIS 55708 at *7 (D.N.J. July 22, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *Rakoff v. St. Clair, CPAS, P.C.*, 2013 U.S. Dist. LEXIS 33710 at *26 (jurisdictional discovery should be "freely granted" and its scope is firmly within a district court's discretion).

### A. Specific Jurisdiction

Pastor's allegations are sufficient to show that its assertion of specific jurisdiction based on successor liability is not "clearly frivolous," so jurisdictional discovery is appropriate. Specific jurisdiction may be appropriate even with respect to a defendant's "single or occasional acts," if the cause of action is one "relating to that in-state activity." *Daimler AG v. Bauman*, 571 U.S. 117, 127 n.19 (2014) (internal citations omitted). It "exists when the claim arises from or relates to conduct purposely directed at the forum state," *Marten*, 499 F.3d at 296, such that the defendant "should reasonably anticipate being haled into court in that form," *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

The issue here is one of imputing a corporation's New Jersey contacts to its successor. "The jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." *Kirkwood*, 2020 U.S. Dist. LEXIS 55104 at *13 (quoting *Am. Estates Wines, Inc. v. Kreglinger Wine Estates Pty, Ltd.*, 2008 U.S. Dist. LEXIS 23494 at *13 (D.N.J. Mar. 25, 2008)). To do so, however, a plaintiff "must plead facts supporting a plausible conclusion that the alleged successor entity is a 'mere continuation of, is the same as, or is not distinct from, the alleged predecessor entity.'" *Thomas-Fish v. Aetna Steel Prods. Corp.*, 2019 U.S. Dist. LEXIS 93124 at *4–5 (D.N.J. June 4, 2019) (quoting *Ostrem v. Prideco Secure Loan Fund, L.P.*, 841 N.W.2d 882, 898 (Iowa 2014)). A plaintiff may meet that pleading burden by alleging facts sufficient to make out a claim that "(1) the successor expressly or

impliedly assumes the predecessor's liabilities; (2) there is actual or <u>de facto</u> consolidation or merger of the seller and the purchaser; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 508 (D.N.J. 2011); *Lefever v. K.P. Hovnanian Enters., Inc.*, 160 N.J. 307, 310 (N.J. 1999) (same); *see also In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 823 (3d Cir. 2005) (same, applying New York law).

Jurisdictional discovery is warranted. True, this Court would lack personal jurisdiction over the defendants if the undisputed facts regarding Bound Brook's corporate succession story told the whole story: that Bound Brook owned the property when the pollution occurred, Bound Brook entered the GKN family and became GKN North America, and Bound Brook/GKN North America was then sold to the Brambles corporate family. In defendants' telling, nothing links GKN Driveline or GKN Sinter to Bound Brook.

According to Pastor, however, those facts are not the only facts. Pastor alleges the following: (1) the GKN parent company reorganized its corporate structure to allocate Bound Brook/GKN North America's assets and liabilities to GKN Driveline and GKN Sinter; (2) in 1997, the GKN parent company created GKN Powder Metallurgy, Inc., which ultimately became GKN Sinter, and which allegedly took over GKN Powder Met., Inc.'s line of business; and (3) the sale of GKN North America to Brambles only involved the sale of "industrial services," even though Bound Brook/GKN North America had at prior times also been engaged in the manufacturing business.

The argument obviously has a lot of moving parts. Nevertheless, these facts sufficiently set forth a plausible allegation of personal jurisdiction. Because these facts, if proven, would have jurisdictional significance, I will permit jurisdictional discovery. For example, if GKN's sale of Bound Brook/GKN North America to Brambles solely involved a transfer of "industrial services," an inference might arise that Bound Brook/GKN North America had already disposed of its manufacturing capabilities or assets elsewhere. That

fact, if established, would lend credence to Pastor's allegations that GKN reorganized its corporate structure to reallocate the assets and liabilities relating to the property. *See Oticon,* 865 F. Supp. 2d at 508 (successor jurisdiction applies if "the successor expressly or impliedly assumes the predecessor's liabilities"); (Sinkevich Cert. Exh. S (letter from counsel for Brambles stating that "Brambles acquired only . . . GKN's industrial services business. It is not apparent that the [Bound Brook] business, if it was involved in automobile parts manufacturing . . . was among the GKN subsidiaries and affiliates whose shares Brambles purchased.")). Furthermore, GKN Powder Metallurgy shares a strikingly similar name to GKN Powder Met., Inc., one of the iterations of Bound Brook/GKN North America. At present, of course, the similarity is no more than suggestive, but it lends some credence to Pastor's assertion that the GKN parent reorganized Bound Brook/GKN North America's assets and liabilities into GKN Powder Metallurgy, which then took over Bound Brook's manufacturing line of business. *Oticon,* 865 F. Supp. 2d at 508 (successor jurisdiction justified if successor is a "mere continuation" of the prior entity); *Woodrick v. Jack J. Burke Real Estate, Inc.,* 306 N.J. Super. 61, 73 (App. Div. 1997) (to determine whether a company is a "mere continuation" of a prior entity, courts consider "continuity of . . . general business operations" and "assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the predecessor") (quoting *Glynwed, Inc. v. Plastimatic, Inc.,* 869 F. Supp. 265, 275–76 (D.N.J. 1994)).

In short, these allegations merit factual investigation. Of course, discovery might support them, refute them, or suggest unanticipated avenues of inquiry. For now, however, it suffices that Pastor has put forth a plausible theory of succession which is not frivolous. The Court will exercise its discretion to permit jurisdictional discovery under the supervision of the Magistrate Judge assigned to the case.

**B. General jurisdiction**

Pastor's assertions that the Court has general jurisdiction, in contrast, are "clearly frivolous" and thus do not justify jurisdictional discovery. A district court possesses general jurisdiction over a corporation at that corporation's "formal place of incorporation," "principal place of business," or those locations where the corporation's "operations" are "so substantial and of such a nature as to render the corporation at home in that state." *Daimler*, 571 U.S. at 139 n.19. Defendants are both incorporated in Delaware and have their principal places of business in Michigan. They have minimal business presences in New Jersey—neither maintains a facility in the state—and there are no facts plausibly alleged that would justify an inference that they have engaged in operations so substantial as to render them "at home" in New Jersey.

Pastor claims that general jurisdiction exists because it allegedly served defendants' managing agent at a property owned by the defendants located in Cinnaminson, New Jersey. They claim that under the doctrine set out in *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 608 (1990), a corporation is subject to general jurisdiction wherever personal service has been effectuated on one of its managing agents.

Pastor's assertions are insufficient. First, the cited basis for Pastor's allegation in fact establishes the opposite—*i.e.,* that the defendants do *not* own the Cinnaminson property. The website that Pastor cites states that the property is owned by an entity named GKN Hoeganaes. *See* Our Locations – GKN Powder Metallurgy, GKN https://www.gknpm.com/en/about-us/locations/. Second, Pastor has provided no support for its contention that the person served at the property was defendants' managing agent; their allegations suggest at best that the individual was an employee of GKN Hoeganaes, and no further facts are alleged to suggest that the individual was employed by the defendants.[3]

---

[3]     Defendants, for their part, state that the employee was not their managing agent but rather a GKN Hoeganaes security guard. (Def. Reply at 2).

At any rate, it does not matter. Although there is a dearth of controlling post-*Burnham* precedent on the issue, I am persuaded that "tag" general jurisdiction applies at best to individuals, not corporations. (By "tag" jurisdiction, I mean jurisdiction based on service of a person who happens to be in the jurisdiction, however fleetingly.) Tag jurisdiction of a corporation *via* its agent, in my view, is inconsistent with the *Daimler* requirement that a corporation be "at home" in the relevant jurisdiction. That an agent might have passed through a jurisdiction falls far short of that standard. Consider, for example, a corporate agent served while transferring flights at a hub airport such as Newark Liberty.

Pre-*Burnham,* that seems to have been the law in the Third Circuit. *See Nehemiah v. Athletics Cong. of the U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985) ("it is undisputed that mere service on a corporate agent cannot establish personal jurisdiction without a minimum contacts inquiry"). The same rule has been applied within this Circuit more recently as well. *See Hunt v. Global Incentive & Meeting Mgmt.*, 2010 U.S. Dist. LEXIS 98828 at *24–25 n.7 (D.N.J. Sept. 20, 2010) (due process requires more than personal service on corporate officer in a forum state to ground general jurisdiction over a corporation). The Ninth Circuit has squarely held that more than personal service of a corporation's agent in the forum is required to exercise jurisdiction over that corporation: "[The United States Supreme Court] has required an analysis of a corporation's contacts with the forum state even when tag jurisdiction . . . would have made such analysis unnecessary."). *Martinez v. Aero Carribbean*, 764 F.3d 1062, 1064, 1068 (9th Cir. 2014); *see also Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182–84 (5th Cir. 1992); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 850–51 (N.D. Ill. 2009); *Estate of Yaron Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005). As the *Martinez* court persuasively explained, personal service justifies general jurisdiction over individuals because their physical presence in the state is a simple concept: they are undeniably "present" in a single, ascertainable place. 764 F.3d at

1067–68. Not so for corporations, which act through agents in many places simultaneously and whose officers are not equivalent to the corporation itself, even when they are acting on the corporation's behalf. *Id.* (citing 1 William Meade Fletcher Cyclopedia of the Law of Corporations § 25 (Supp. 2011)).

Pastor's allegations do not set forth a plausible case of general jurisdiction. I therefore will not authorize wide-ranging jurisdictional discovery regarding general jurisdiction.

**ORDER**

For the reasons set forth above,

IT IS this 8th day of September, 2020

ORDERED as follows:

1. The defendants' motion (DE 7) to dismiss the complaint for lack of personal jurisdiction is denied without prejudice.

2. The parties shall, within ten (10) days, confer and arrange a conference with Magistrate Judge James B. Clark, III in order to establish a schedule for jurisdictional discovery on the issue of specific jurisdiction only. Should developments warrant, the motion may be renewed.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**